Citation Nr: 1237383 
Decision Date: 10/31/12 Archive Date: 11/09/12

DOCKET NO. 08-11 362 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Nashville, Tennessee


THE ISSUE

Entitlement to service connection for an acquired psychiatric disorder, including posttraumatic stress disorder (PTSD).


REPRESENTATION

Appellant represented by: Disabled American Veterans


WITNESS AT HEARING ON APPEAL

The Veteran


ATTORNEY FOR THE BOARD

Jason A. Lyons, Counsel


INTRODUCTION

Please note this appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c) (2012). 38 U.S.C.A. § 7107(a)(2) (West 2002 & Supp. 2012).

The Veteran served on active duty from February 1977 to January 1984, with additional reserve duty from 1992 to 1999. 

This matter comes before the Board of Veterans' Appeals (Board) on appeal from a May 2006 rating decision of the Department of Veterans Affairs (VA) Regional Office (RO) in Indianapolis, Indiana, denying service connection for depression. Jurisdiction was later transferred to the RO in Nashville, Tennessee. 

In July 2009, a Travel Board hearing was held before the undersigned. Relevant to this proceeding, in Bryant v. Shinseki, 23 Vet. App. 488 (2010), the United States Court of Appeals for Veterans Claims (Court) held that 38 C.F.R. § 3.103(c)(2) (2012) requires that the VLJ who chairs a hearing fulfill two duties to comply with the above regulation. These duties consist of (1) the duty to fully explain the issues and (2) the duty to suggest the submission of evidence that may have been overlooked. Here, during the hearing, the VLJ noted the basis of the prior determination and noted the elements of the claim that were lacking to substantiate the claim for benefits. In addition, the VLJ sought to identify any pertinent evidence not currently associated with the claims folder that might have been overlooked or was outstanding that might substantiate the claim. Moreover, neither the Veteran nor his representative has asserted that VA failed to comply with 38 C.F.R. § 3.103(c)(2), or otherwise identified any prejudice in the conduct of the hearing. By contrast, the hearing focused on the elements necessary to substantiate the claim. As such, the Board finds that, consistent with Bryant, the undersigned complied with the duties set forth in 38 C.F.R. § 3.103(c)(2) and that the Board can adjudicate the claim based on the current record.


The Board issued a decision in November 2010 denying service connection for an acquired psychiatric disorder other than PTSD, to include major depressive disorder, dysthymia and adjustment disorder. The Veteran appealed to the United States Court of Appeals for Veterans Claims (Court). Through a June 2011 Court order, the Joint Motion for Remand filed by the Veteran's attorney and VA's Office of General Counsel (parties) was implemented, vacating the November 2010 decision and remanding the case back to the Board. 

Thereafter, in view of the Joint Motion for Remand, in October 2011 the Board recharacterized the claim on appeal as service connection for an acquired psychiatric disorder to include PTSD, major depressive disorder, dysthymia and adjustment disorder. The Board then remanded the expanded issue on appeal for further evidentiary development and consideration. This claim has since returned to the Board for an appellate disposition. 


FINDINGS OF FACT

1. The most competent and probative evidence effectively weighs against a finding of a current clinical diagnosis of PTSD. 

2. The condition of depression was not incurred during military service, and instead has been attributed by competent medical opinion to a pattern of post-service substance abuse. 


CONCLUSION OF LAW

The criteria are not met to establish service connection for an acquired psychiatric disorder, including PTSD. 38 U.S.C.A. §§ 105, 1110, 1131, 5103, 5103A, 5107(b) (West 2002 & Supp. 2012); 38 C.F.R. §§ 3.102, 3.159, 3.301(d), 3.303, 3.304(f) (2012).


REASONS AND BASES FOR FINDINGS AND CONCLUSION

VA's Duty to Notify and Assist the Veteran

The Veterans Claims Assistance Act of 2000 (VCAA), codified at 38 U.S.C.A. §§ 5100, 5102, 5103A, 5107, 5126 (West 2002 & Supp. 2012), prescribes several requirements as to VA's duty to notify and assist a claimant with the evidentiary development of a pending claim for compensation or other benefits. Implementing regulations were created, codified at 38 C.F.R. §§ 3.102, 3.156(a), 3.159 and 3.326 (2012).

VCAA notice consistent with 38 U.S.C.A. § 5103(a) and 38 C.F.R. § 3.159(b) must inform the claimant of any information and evidence (1) that is necessary to substantiate the claim; (2) that the claimant is expected to provide; and (3) that VA will seek to provide on the claimant's behalf. See also Pelegrini v. Principi, 18 Vet. App. 112, 120-121 (2004) ("Pelegrini II"). A regulatory amendment effective for claims pending as of or filed after May 30, 2008 removed the requirement that VA specifically request the claimant to provide any evidence in his or her possession that pertains to the claim. 73 Fed. Reg. 23,353-56 (Apr. 30, 2008), codified later at 38 C.F.R. 3.159(b)(1).

The United States Court of Appeals for Veterans Claims (Court) has further held in Dingess/Hartman v. Nicholson, 19 Vet. App. 473 (2006); aff'd sub nom. Hartman v. Nicholson, 483 F.3d 1311 (Fed. Cir. 2007), that the VCAA notice requirements of 38 U.S.C.A. § 5103(a) and 38 C.F.R. § 3.159(b) apply to all five elements of a "service connection" claim, including notice to the claimant that a disability rating and an effective date for the award of benefits will be assigned if service connection is awarded.

Through VCAA notice correspondence dated from March 2006 and October 2011, the RO (including through the Appeals Management Center (AMC)) notified the Veteran as to each element of satisfactory notice set forth under 38 U.S.C.A. § 5103(a) and 38 C.F.R. § 3.159(b). The VCAA notice further indicated the joint obligation between VA and the Veteran to obtain pertinent evidence and information, stating that VA would undertake reasonable measures to assist in obtaining additional VA medical records, private treatment records and other Federal records. See Quartuccio v. Principi, 16 Vet. App. 183, 186-87 (2002). Information provided through October 2011 notice letter pertained to the downstream disability rating and effective date elements of the Veteran's claim.

The relevant notice information must have been timely sent. The Court in Pelegrini II prescribed as the definition of timely notice the sequence of events whereby VCAA notice is provided in advance of the initial adjudication of the claim. See also 38 U.S.C.A. § 5103(a); 38 C.F.R. § 3.159(b)(1). In this instance, the March 2006 VCAA notice correspondence was issued prior to the May 2006 RO rating decision adjudicating the Veteran's claim for service connection, and therefore comported with the standard for timely notice. Meanwhile, the October 2011 notice correspondence was issued to the Veteran following the RO rating decision on appeal, and technically did not meet the definition for what constitutes timely notice. This notwithstanding, the Veteran has had the opportunity to respond to the October 2011 VCAA correspondence before issuance of the July 2012 Supplemental SOC (SSOC) continuing the denial of his claim. Moreover, there is no indication of any further available information or evidence to obtain to support the Veteran's claim. Thus, the Veteran has had the full opportunity to participate in the adjudication of this claim. See Mayfield v. Nicholson, 19 Vet. App. 103, 128 (2005), affirmed, 499 F.3d 1317 (Fed. Cir. 2007). 

The RO/AMC has taken appropriate action to comply with the duty to assist the Veteran in this case through obtaining extensive records of VA outpatient treatment, service treatment records (STRs), service personnel records, and records pertaining to the receipt of disability benefits from the Social Security Administration (SSA). The Veteran has also undergone two VA in-depth Compensation and Pension examinations for mental health evaluation. See 38 C.F.R. § 3.159(c)(4). In furtherance of his claim, the Veteran has provided a VA psychologist's treatment summary, and numerous personal statements. He testified during a Board hearing. The record as it stands includes sufficient competent evidence to decide the claim. Under these circumstances, no further action is necessary to assist the Veteran.

In sum, the record reflects that the facts pertinent to the claim have been properly developed and that no further development is required to comply with the provisions of the VCAA or the implementing regulations. That is to say, "the record has been fully developed," and it is "difficult to discern what additional guidance VA could [provide] to the appellant regarding what further evidence he should submit to substantiate his claim." Conway v. Principi, 353 F. 3d. 1369 (Fed. Cir. 2004). Accordingly, the Board will adjudicate the claim on the merits. 

Background and Analysis

Legal Criteria

Service connection may be granted for any current disability that is the result of a disease contracted or an injury sustained while on active duty service. 38 U.S.C.A. § 1110 (West 2002 & Supp. 2012); 38 C.F.R. § 3.303(a) (2012). Service connection may also be granted for a disease diagnosed after discharge, where all the evidence, including that pertinent to service, establishes that the disease was incurred in service. 38 C.F.R. § 3.303(d) (2012).

The elements of a valid claim for direct service connection are as follows: (1) medical evidence of a current disability; (2) medical, or in certain circumstances, lay evidence of in-service incurrence or aggravation of a disease or injury; and (3) medical evidence of a nexus between the claimed in-service disease or injury and the current disability. Hickson v. West, 12 Vet. App. 247, 253 (1999).

Where a chronic disease is shown during service, subsequent manifestations of the same chronic disease at any later date, however remote, are service-connected, unless clearly attributable to intercurrent causes. On the other hand, continuity of symptomatology is required where the condition noted during service is not shown to be chronic, or where the diagnosis of chronicity may be legitimately questioned. Under the latter circumstances, a showing of continuity of symptomatology at the time of service discharge and continuing thereafter is required to support the claim. 38 C.F.R. § 3.303(b).

Service connection is also available for a preexisting condition provided it was aggravated during service beyond its natural progression. 38 U.S.C.A. § 1153; 38 C.F.R. § 3.306. A preexisting injury or disease will be considered to have been aggravated by active service where there is an increase in disability during service. In order to rebut the presumption of aggravation, there must be clear and unmistakable evidence that the increase in severity was due to the natural progress of the disability. 38 U.S.C.A. § 1153; 38 C.F.R. § 3.306(a). 

Under VA law, every person employed in the active military, naval, or air service shall be taken to have been in sound condition when examined, accepted and enrolled for service, except as to defects, infirmities, or disorders noted at the time of the examination, acceptance and enrollment, or where clear and unmistakable evidence demonstrates that the injury or disease existed before acceptance and enrollment and was not aggravated by such service. 38 U.S.C.A. §§ 1111, 1137.

VA's Office of General Counsel has issued a precedent opinion holding that in order to rebut the presumption of soundness in 38 U.S.C.A. § 1111, VA must demonstrate by clear and unmistakable evidence both that the disease or injury in question existed prior to service and that it was not aggravated by service. VAOPGCPREC 3-2003 (July 16, 2003). 

The specific criteria for establishing service connection for PTSD are: (1) medical evidence diagnosing PTSD; (2) credible supporting evidence that the claimed in-service stressor actually occurred; and (3) medical evidence of a link between current symptomatology and the claimed in-service stressor. A diagnosis of PTSD must be established in accordance with 38 C.F.R. § 4.125(a), which provides that all psychiatric diagnoses must conform to the fourth edition of the American Psychiatric Association's Diagnostic and Statistical Manual for Mental Disorders (DSM-IV). 38 C.F.R. § 3.304(f) (2012).

The evidence necessary to establish the occurrence of a recognizable stressor during service to support a diagnosis of PTSD will vary depending upon whether the veteran engaged in "combat with the enemy," as established by recognized military combat citations or other official records. See, e.g., Hayes v. Brown, 5 Vet. App. 60, 66 (1993); Cohen v. Brown, 10 Vet. App. 128 (1997). If VA determines the veteran engaged in combat with the enemy and his alleged stressor is combat-related, then his lay testimony or statement is accepted as conclusive evidence of the stressor's occurrence and no further development or corroborative evidence is required provided that such testimony is found to be "satisfactory," i.e., credible, and "consistent with the circumstances, conditions, or hardships of service." 
See 38 U.S.C.A. § 1154(b); 38 C.F.R. § 3.304(d); Dizoglio v. Brown, 9 Vet. App. 163, 164 (1996); Zarycki v. Brown, 6 Vet. App. 91, 98 (1993).

If, however, the veteran's stressor is unrelated to participation in combat, then his lay testimony, in and of itself, is insufficient to establish the occurrence of the alleged stressor. Instead, the record must contain credible supporting information from an independent source that corroborates his testimony or statements, such as service records. See Cohen, 10 Vet. App. at 146-47. See also Moreau v. Brown, 9 Vet. App. 389, 394-95 (1996). The available sources for corroboration of a claimed stressor are not necessarily limited to service records, but may also include other sources of evidence such as lay statements from third-party individuals. See Cohen, 10 Vet. App. at 143 (indicating that corroborating sources need not be found only in service records, contrary to what was previously set forth under the VA Adjudication Manual, M21-1, Part VI, para 7.46(f) (Sept. 21, 1992); and M21-1, Subch. XII, para 50.45(d) (1989)).

Apart from the above provisions, there is a recent regulatory change to the pertinent criteria. Effective July 13, 2010, VA revised the regulation governing adjudication of claims for service connection for PTSD. See 75 Fed. Reg. 39,843 (to be codified at 38 C.F.R. § 3.304(f)). The new regulation essentially softens the requirement that there be objective corroboration of a claimed in-service stressor. Under the new standard, if a stressor claimed by a veteran is related to the veteran's fear of hostile military or terrorist activity and a VA psychiatrist or psychologist confirms that the claimed stressor is adequate to support a diagnosis of PTSD and that the veteran's symptoms are related to the claimed stressor, provided the claimed stressor is consistent with the places, types, and circumstances of the veteran's service, the veteran's lay testimony alone may establish the occurrence of the claimed in-service stressor. 

Generally, VA law and regulations preclude granting service connection for a disability that originated due to substance abuse, as this is deemed to constitute willful misconduct on the part of the claimant. See U.S.C.A. § 105; 38 C.F.R. § 3.301(d). See also VAOPGCPREC 7-99 (June 9, 1999). The United States Court of Appeals for the Federal Circuit ("Federal Circuit"), however, held in Allen v. Principi, 237 F.3d 1368, 1381 (Fed. Cir. 2011) that there is a limited exception to this doctrine when there is "clear medical evidence" establishing that a claimed condition involving alcohol or drug abuse was acquired secondary to a service-connected disability, itself not due to willful misconduct.

Factual Background

The Veteran's service treatment records from his active duty service from February 1977 to January 1984 are absent specific mention of any diagnosis, symptoms or treatment for a mental health disorder. This includes on his December 1983 military separation examination.

Records associated with subsequent medical evaluation during a period of reserve duty in the mid-1990s also does not reference any treatment history for a mental health condition.

The Veteran's complete official service personnel file is of record. There is reference in the file to receipt of a meritorious achievement award during the period July 1978 through October 1979, a subsequent Meritorious Service Medical for service from February 1980 to January 1981, the Army Commendation Medal in May 1980, and the Good Conduct Medal in August 1981. 

There is also reference in the file to an October 1982 General Counseling Form due to an ostensible failure earlier that month to comply with the instructions of a superior officer, which was to "get everything ready for the alert" (presumably a drill of some type), and the Veteran knew he did not have enough materials and yet still failed to get them. Other records in the personnel file refer to ongoing counseling for weight management, including enrollment into the Weight Control Program. 

In April 1983, the Veteran was counseled again for having been absent from his formation at a designated time. Another April 1983 narrative from a commanding officer states in part that "events in [the Veteran's] life have caused a great deal of depression and resulted in several bad checks." In August 1983, the Veteran received another General Counseling Form for having been absent from formation at a designated time. It was further observed that the Veteran had previously been counseled and received an Article 15 within the last six months, following what appeared to be an "I don't care" attitude that "would no longer be put up with." Also noted in a contemporaneous General Counseling Form was that the Veteran reported to work unshaven, and that this would not be tolerated again. The reporting official proceeded to state that that the Veteran's job performance was low and the main reason was because he did not appear to be a "self-starter" and he was not giving his section the supervision it should have. 

There is further reference in the file to a September 1983 auto accident in Germany after the Veteran lost control of his vehicle. The incident was determined to have occurred in the line of duty, and while under the influence of alcohol. A letter of reprimand was issued to the Veteran in connection with the incident, though the case was not referred for prosecution under the Uniform Code of Military Justice due to lack of sufficient evidence. 

In December 1983, the Veteran was counseled again for having been absent from his place of duty for a period of about one day. Later that month, the Veteran was referred for psychiatric evaluation by his unit Commander, due to his "lack of motivation/failure to maintain standard." It was indicated in the evaluation that the Veteran had been transferred to his most recent until four months previously. He reported difficulties for one year due to separation from his wife, pending divorce. The Veteran had no past history of psychiatric illness or the treatment thereof. On mental status exam, the Veteran was oriented to person, place, time and situation. There was no evidence of any formal thought disorder or loose associations. The Veteran's mood reflected mild depression and affect was appropriate. His behavior was cooperative and open. The Veteran denied suicidal or homicidal ideations. The stated findings and conclusions of the mental health evaluator indicated that the Veteran did not have a major psychiatric disorder that would warrant disposition through medical channels. The Veteran was psychiatrically cleared for administrative action deemed appropriate by Command. However, it was recommended the Veteran should be followed by this clinic if retained in service, due to concerns for his depression. If separated from the service, the Veteran should be informed of services available though the VA. 

The December 1983 report of Notification for Recommendation for Elimination indicates that the Veteran had been notified that his separation from the Army had been recommended for Unsatisfactory Performance under the provisions of Chapter 13. The specific allegations on which this proposed action was based were that as an Army soldier, the Veteran had ostensibly demonstrated a distinct lack of professional pride and initiative, which had resulted in numerous letters of indebtedness, Article 15s, a General Letter of Reprimand, enrollment in the overweight program and a substandard Enlisted Evaluation Report. Since the Veteran had been in his most recent unit, as a result of a rehabilitative transfer, he had not responded to any counseling, both formal and informal, in an effort to change his apathetic attitude towards the military. Thereafter, the Veteran was released from active duty under Chapter 13 with an Honorable Discharge, and transferred to the Individual Ready Reserve. The remarks section of the Veteran's qualification record (DA Form 2-1) was annotated to reflect "Not Recommended for Further Military Service." 

Thereafter, following discharge from military service, there are on file VA outpatient treatment records indicating intermittent counseling beginning in 1990 for various forms of substance abuse. On various occasions, the Veteran complained of a few depressive type symptoms, but neither depression nor any other mental health disorder was ever formally diagnosed. An April 1998 report of a VA clinical evaluation indicates an assessment, in pertinent part, of alcohol dependence, cocaine dependence, heroin abuse, rule out dysthymic disorder, and rule out PTSD. An April 2000 report of discharge from a VA domiciliary Substance Abuse Treatment Program indicates a diagnosis, in pertinent part, of alcohol dependence, cocaine abuse, and opioid abuse. 

Then upon an April 2001 VA psychological evaluation, the diagnosis was polysubstance abuse, and dysthymia. An August 2003 VA psychiatrist's outpatient evaluation along similar lines finally shows a history of depression, along with a long history of alcohol dependence, and cocaine abuse. 

In November 2005, the Veteran filed the instant claim for service connection for depression. In accompanying correspondence, he stated that he became depressed while stationed in Germany, about 1982, and "used alcohol for medicine."

More recently, the Veteran underwent a detailed VA psychological evaluation in February 2008. The Veteran was told that the assessment was to help identify any psychological problems that would reduce his functioning in the substance abuse recovery program, as well as strengths that would facilitate the efficacy of his treatment plan. As to pertinent psychosocial history, it was indicated that his parents divorced and his mother remarried "a sadistic pedophile" and that he and his brother endured extreme and physical and sexual abuse from this person. The Veteran further recalled that at age 14 his stepfather committed suicide. The Veteran further elaborated that after joining the military in 1977, he was married in Seoul, South Korea in 1980. According to the Veteran, this union lasted until 1987 when the divorce was finalized, but she had left him for someone else in 1983. His wife was in the United States and he was in Germany when she left him. He reported that she left him by sending him a "Dear John" letter. The Veteran stated that his first wife was a Korean prostitute. As to his military background, the Veteran stated that he was initially supposed to go to officer's training school, however, he became depressed and unable to perform his duties. He was subsequently discharged under a Chapter 13 for unsatisfactory performance. He stated that he had been depressed for most of his life, but that the situation took him "from a depressed person who is functional to a depressed person who was not functional." He reported poor activities of daily living, poor attitude, he quit shaving, he stopped shining his shoes, and he began missing formations. He was discharged from the Army in January 1984, at the age of 25. He then became a self-reported "bum." He stated that he went from shelter to shelter, and living in the street. The Veteran began to use drugs at this time, becoming addicted and living as a transient. Sometime in 1992 he came to terms with the fact that he was an alcoholic while staying in the Salvation Army. He stated that he started to understand that he could have some control and stay sober. He attended college and obtained an undergraduate degree in nursing. Upon completion of nursing school, he went to graduate school for nursing in 1996. The Veteran worked primarily as an agency nurse, which allowed him to work different shifts, and take off for months at a time, all while making money in a short period of time to support his lifestyle. This is also when he began to use drugs and alcohol again in what appeared to be quite an extensive fashion. He reported that he used drugs and alcohol as a way to deal with depression and anxiety. He was married again in 1994 and divorced in 1997.

The Veteran further wanted it emphasized with regard to his history his belief that one of the biggest turning points in his life was in the Army. He stated that he was always dysthymic. However, he had always wanted to be like his biological father, even though he did not know him, in that he wanted to follow in the course of Army training. Therefore, he signed up for Office Candidate School (OCS) training and was accepted (which he identified as a high honor). He reported that he was doing exceptionally well in OCS until he was injured in the process (shin splints). He stated that he was unable to finish, was "labeled" with a "training deficiency," and subsequently was removed from OCS. He stated that this was devastating as this was a "childhood dream." After OCS ended he was sent to Germany on an unaccompanied tour without his wife, because the Army "had to send me somewhere." He stated that his wife almost immediately started seeing people socially while he was stationed in Germany. After he left she began to spend all of his money, putting him into enormous financial stress. He felt this took him down even more. Furthermore, he was assigned to unit to work on equipment that he had never been trained on. He stated that the overwhelming barrage of events progressively continued to make him worse and, per his perception, this is why he became so depressed that he could not get out of bed. He reported that this was more depression than he had ever experienced in his life (loss of job, loss of wife, loss of prestige, loss of financial control) and he believed that no one in the Army attempted to help him with his depression. 

As to psychiatric history, the Veteran had seven or eight alcohol and drug treatment since 1984. He denied any psychiatric admissions that were based primarily or solely on depression or anxiety. However, he reported that he was treated for clinical depression and anxiety secondary to being admitted for polysubstance abuse. On mental status evaluation, the Veteran was dressed appropriately and grooming was within normal limits. Mood was described as depressed, and observed affect was flat. Speech and thought processes were normal. The Veteran denied current suicidal ideation, as well as hallucinations, however, the medical record indicated suicide attempts in 1999 and 2003 by overdose. There were numerous hospitalizations for depression with suicidal ideation and substance abuse treatment. The diagnostic impression given was PTSD (non-combat related); major depressive disorder, recurrent, severe without psychotic features (transient psychosis under stress is plausible); polysubstance abuse (reportedly in remission); and personality disorder (features strongly indicative of avoidant personality, passive-aggressive personality, and borderline personality disorder). 

In April 2008 correspondence, the Veteran described his steady promotion through the enlisted ranks during his first few years of military service, and commendations and awards earned, as well as selection for the NCO Academy. He stated that he initially received several positive personnel evaluations, and was told for instance that he had a "cheerful attitude" and was "a pleasure to work with." The Veteran further recounted that he was relieved from the OCS Candidate course in June 1982 for a training deficiency, and that this was devastating to him. He was then sent to Germany, which required his physical separation from his wife and recently born child. According to the Veteran, when he arrived in Germany everyone in his unit was aware that he had "washed out" of OCS and derided him for this, and further the Veteran was assigned occupational duties for which he did not have the proper background. He then received notice that his wife wanted a divorce. He then experienced further personnel difficulties in the military and ultimately was discharged with a bar to reenlistment. The Veteran identified the foregoing events as the beginning of his depression, which he stated had continued until the present time. He stated that the drastic change in the course of his military career was caused by a total emotional breakdown due to events both due to and contemporaneous with service.

The Veteran underwent a VA Compensation and Pension examination by a psychiatrist in March 2010. The VA examiner initially noted having reviewed the entire claims file, including service records, and VA medical records. It was observed that review of the Veteran's records took an extremely long time but depression as a diagnosis did not appear until long after his discharge nor did he seek treatment for such for quite some time. As to social and medical history, it was indicated that the Veteran had experienced physical and sexual abuse starting at age 7 until age 13 by his stepfather, until his stepfather committed suicide. As to military background, the contents of the Veteran's service personnel file were briefly reviewed. The Veteran's personnel history was reviewed (drawing in part on the results of the above-cited February 2008 VA psychological summary). It was further noted as to history of substance abuse that the Veteran had undergone hospitalizations for cocaine and other substances, and his primary drug of choice was alcohol. At that time, the Veteran was undergoing dialectical therapy for major depression and for treatment of PTSD arising from childhood abuse, per the Veteran's report. Also stated was that he was under a suicidal prevention safety plan which he expected to be lifted in the very near future. A review of the diagnosis on discharge from several VA hospitalizations over the past few years was provided. Thereafter, the VA examiner conducted a complete VA psychiatric examination. 

The diagnostic impression given was PTSD from childhood abuse; alcohol dependence in partial remission; and borderline personality disorder, prominent features of antisocial personality disorder. According to the VA examiner, the Veteran's tragic physical and sexual abuse created the situation for the development of the lifelong condition of Borderline Personality Disorder that had been diagnosed at other VA facilities. 

The VA examiner proceeded to list in great detail the significant elements of the Veteran's psychosocial history, often quoting in substantial part from the reports of previous VA evaluators. As to new details elucidated specifically by this VA examiner, it was indicated the Veteran reported all of his initial accomplishments in the military were to ensure that he did not suffer from depression, prior to ultimately being "devastated" by failing OCS. However, according to the examiner, the Veteran's "devastation" to washing out of OCS he blamed as the cause of his "failed life," while it would be expected that one might be disappointed and perhaps for awhile, his over-reaction was much more than would be expected from a hitherto reasonable person, and could hardly by the cause of lifelong failure. The examiner further observed that at the same time, it had to be considered that the Veteran later obtained a BS nursing degree after the military and now held a valid state license as a nurse. The VA examiner further pointed out the Veteran's history of disciplinary problems during military service. Also noted was that when the Veteran applied for admission into the Army National Guard in March 1992, he specifically denied any psychiatric symptoms. Also noted was that while the Veteran portrayed himself to be having depression caused by his military service, he was treated at Northampton VA Medical Center (VAMC) in 1990 not for depression but only substance abuse issues. The VA examiner then found the first confirmed diagnosis of depression after the Veteran started going to the Baltimore VAMC in the late-1990s, but by 2005 this diagnosis was deleted and he was being treated again for polysubstance abuse and with the addition of a personality disorder as a diagnosis. Further noted was that the Veteran displayed all of the necessary criteria of borderline personality disorder of a pattern of unstable intense interpersonal relationships, including being "devastated" when he washed out of OCS, reported a level of distress when he washed out of OCS, reporting a level of distress that went well beyond that expected of a reasonable person. His inappropriate intense anger as well as affective instability with marked reactivity of mood and intense episodic dysphoria along with substance induced depression had led to repeated diagnoses of "major depression," which followed a course that was not characteristic of major depression. This better explained his failure to multiple trials of all forms of antidepressant medication and treatments save electroconvulsive therapy. 

The VA examiner further commented that he found the Veteran's credibility as a historian to be highly suspect on reviewing the service files, and especially when comparing his statements documented from other facilities to statements recently made. The only diagnosis that had been consistently found as the Veteran went to different VAMCs had been alcoholism and polysubstance abuse. However, the features of the personality disorder appeared to be the "drive" of his varied complaints. It was not felt that any claim of depression could be attributed to the Veteran's military service, but rather features of his personality disorder often in combination with substance usage. The VA examiner found the Veteran's claim that he repeatedly became depressed and attempted to self medicate it with alcohol hard to accept, as those that attempted to do this would soon learn from repeated failures, and additionally there were many recorded instances of substance abuse and addiction prior to any diagnosis and treatment of depression. 

By a decision issued in November 2010, the Board denied a claim for service connection for an acquired psychiatric disorder other than PTSD, to include major depressive disorder, dysthymia and adjustment disorder. The basis for that denial was the absence of a diagnosed psychiatric disability of record for which service connection was cognizable. In this regard, the Board noted that the March 2010 VA examiner had refused to diagnose depressive disorder. As to diagnosed substance abuse disorder, this was not cognizable under VA law; the Veteran's personality disorder similarly could not be recognized, absent superimposed injury or disease in service, not shown here. Where elsewhere PTSD had been diagnosed, this had been attributed to a history of childhood abuse prior to commencing military service. 

Following the Veteran's appeal to the Court, the parties' June 2011 Joint Motion for Remand held that the Board had "improperly narrowed the scope of [the Veteran's] claim where it failed to adequately consider all psychiatric disabilities, to include PTSD." The Court cited to its prior holding in Clemons v. Shinseki, 23 Vet. App. 1 (2009), which provided that in light of the fact a claimant generally is not competent to provide a medical diagnosis, a claim for service connection for PTSD constituted a generalized claim for benefits based on any acquired mental disorder where the evidence showed that the claimant did not have PTSD but suffered from a different mental disorder. According to the Joint Motion, the Clemons holding operated in the instant case as to effectively necessitate discussion of the viability of a theory of service connection for PTSD. The Joint Motion observed that "while the evidence showed that [the Veteran's] PTSD was attributed to child abuse and appears to have predated his military service, it is conceivable that [the Veteran's] psychiatric condition may have worsened during service." Therefore, the case was remanded back to the Board to address this theory of recovery, of in-service aggravation of pre-existing PTSD. 

Following an October 2011 remand by the Board to address the concerns of the Court, this case is now back before the Board for a disposition.

More recent evidence consists of a November 2011 report from Dr. N.C., a VA staff psychologist and coordinator of PTSD residential programs. The VA psychologist indicated the Veteran having undergone treatment at the PTSD and Anxiety Disorders Treatment Program since August 2011. The psychologist had been the Veteran's therapist during this time and had become quite familiar with his mental health history, and also had prior experience as a Commissioned Office and psychologist in the Army. According the VA psychologist, the Veteran did have a history of childhood abuse as did as much as 50 percent of segments of the military population according to one study. Childhood trauma along with low socioeconomic status, low education, low intelligence, life stressors, lack of social support, female gender, younger age, and minority status were all significant predictors of developing PTSD. Additionally, several risk factors for depression had been identified as experiencing childhood trauma, having biological relatives with history of alcoholism, personality traits of low self-esteem, poverty and poor social support. Yet there was no preclusion of persons who exhibited the identified risk factors from entering into military service unless there was some evidence of associated functional impairment. Obviously, this was not the case with the Veteran, as review of his military and personnel records indicated that upon entering the Army in 1977, within a period of 5 years he had progressed to the rank of Staff Sergeant (E-6), completed several military and civilian courses of instruction with honors, been placed in several positions of authority and responsibility, received numerous awards and commendations, selected to attend OCS, and successfully completed several tours of duty including overseas to Korea. Not only was the Veteran apparently not functionally impaired at the time of entry into service, he appeared to have been functioning behaviorally, emotionally, and psychologically at a fairly high level for a prolonged period of time in service. 

The VA psychologist's report continued that by self report and corroborated by military records, the Veteran's significant functional impairment did not begin until after he experienced a series of significant stressful events that occurred during and were directly related to his military service. The Veteran was dismissed from OCS due to physical injury. He was then separated from his wife and infant daughter as a result of his unaccompanied overseas tour of duty in Germany. He was placed in an unsupportive environment (e.g., ridiculed for his involvement in OCS, and placed in a position of authority and responsibility in a unit with whose equipment he had no familiarity or training). He appeared to have experienced significant marital difficulties (e.g., wife leaving him) as well as financial difficulties. According to the psychologist, any one of these events alone would be sufficient to negatively impact one's mental health and result in functional impairment. These events happened within a short time frame of several months. Indeed, per the DSM-IV-R, episodes of major depressive disorder often follow a severe psychosocial stressor (e.g., marital separation, divorce) and studies suggest that a psychosocial stressors may play a more significant role in the precipitation of the first or second episodes of major depressive disorder. 

According to the psychologist, review of the Veteran's military records indicated that contemporaneously with the occurrence of these stressors, the Veteran's functioning appeared to have deteriorated as evidenced by poor work performance (e.g., "job performance is low", missing formation, absent from duty), lack of motivation (e.g., "you are not a self-starter"), apathy (e.g., "I don't care attitude"), failure to maintain appropriate military standards (e.g., weight gain), low self-esteem (e.g., "no respect for yourself"). His commander, in an April 1983 counseling statement, noted that "events in [the Veteran's] personal life have caused a great deal of depression" and the Division Psychiatrist, in the Chapter 13 mental health evaluation, noted that should the Veteran be retained in service, he should be followed due to concerns for his depression. According to the DSM-IV-R, loss of interest, "not caring anymore" and social withdrawal increased appetite with associated weight gain; sense of worthlessness; impaired ability to think and make decisions resulting in those in intellectually demanding occupational pursuits being unable to function adequately; and impairment interfered with the ability to function occupationally/socially, even unable to maintain personal hygiene were characteristics of a major depressive episode. 

The psychologist further stated that disorders such as depression and PTSD were not in and of themselves disqualifying for military service. Again, the question was functional impairment thus, even if the Veteran did have depression or PTSD prior to his military service, of which there was no record of this, he was able to function in the military environment. Further, it was not until he experienced several stressors related to his military service that his functioning deteriorated eventually resulting in his separation from service through administrative channels. Hence, his military service either likely caused a depressive disorder or exacerbated preexisting PTSD to the point of functional impairment. With respect to his military record, there appeared to be no evidence of depression or PTSD prior to his experiencing the identified psychosocial stressors. There were significant indicators that, after having experienced these psychosocial stressors, the Veteran evidenced signs of depression while still in service. Review of this medical records post military service indicated he had continued to experience a depressive mood disturbance in addition to PTSD. 

Also that month, the Veteran provided correspondence outlining what he considered to be his alleged stressors from military service, in furtherance of a claim for service connection for PTSD. He indicated the following in-service stressors: having been relieved from OCS in June 1982; having been sent to Germany in August 1982 on an unaccompanied tour leaving his newborn daughter and wife in the continental United States; having been assigned to a new unit following leaving OCS where there was a type of weapon utilized that he knew very little about; having been derided in his new unit for having "washed out" of OCS; having begun to overeat and put on weight due to stress from all of the aforementioned situations; having been in severe financial difficulty; having received a letter from his wife stating that she wanted a divorce; having been barred from re-enlistment in military service; having had a Chapter 13 discharge proceeding instituted against him for unsatisfactory performance. 
The March 2012 report from the same VA psychologist who had offered the November 2011 treatment summary stated that the Veteran had successfully completed the seven-week residential treatment program for PTSD in the PTSD and anxiety disorders program at the Cincinnati VA Medical Center (VAMC). 

An April 2012 report of contact, following a telephone consultation with the Veteran, documents that the Veteran stated he did not have a anything else to add, but did stress the fact that he had a childhood history of abuse that was exacerbated by military service. The Veteran also wanted to highlight the fact that he had an outstanding military career until he failed OCS, and after this incident, his career spiraled out of control and he was separated out of the military. 

The Veteran underwent another VA Compensation and Pension examination in June 2012, completed by a psychologist. A detailed mental status interview, along with consideration of military service records and other pertinent psychosocial history was completed, including based on review of the claims file. In particular, with regard to claimed PTSD, the VA examiner considered each of the Veteran's reported stressors. First, the Veteran claimed that the military was not a supportive environment. According to the examiner, this did not constitute a recognizable stressor as it was not due to hostile enemy activity or terrorist activity, nor was it sufficient to cause PTSD. Second, the Veteran reported that he had to attend a "fat man" program in service and felt ridiculed. According to the examiner, this did not constitute a recognizable stressor as it was not due to hostile enemy activity or terrorist activity, nor was it sufficient to cause PTSD. Third, the Veteran reported that he experienced childhood abuse. The examiner indicated that this clearly was sufficient to support a diagnosis of PTSD, but had no association with the Veteran's service. The VA examiner then went through each of the key categories of symptomatology under the DSM-IVR for evaluating signs and symptoms of PTSD, and in each instances noted prominent symptomatology that was lacking to substantiate the diagnosis of PTSD. It was determined on a review of all diagnostic criteria to establish a PTSD diagnosis that the Veteran did not meet the full criteria for PTSD based on symptomatology alone (i.e., apart from the lack of a corresponding in-service stressor). For instance, the Veteran did not manifest signs of two or more symptoms of increased arousal through difficulty sleeping or hypervigilance. There were not three or more signs of persistent avoidance of stimuli associated with trauma and numbing of general responsiveness. The examiner expressly noted on her report that the Veteran did not meet the full criteria for PTSD. Further noted was that whereas the Veteran had completed a VA sponsored PTSD residential treatment program in 2011, progress notes for this program confirmed that he did not meet the actual criteria for a PTSD diagnosis but was admitted anyway. His score on psychometric testing was below the cutoff for PTSD.

It was observed that the Veteran's symptoms did not meet the diagnostic criteria for PTSD under the DSM-IV criteria. The overall diagnosis given consisted of substance abuse reported to be in partial remission; depressive disorder, not otherwise specified (NOS); and personality disorder, NOS. Regarding substance abuse disorder, it was observed that the Veteran was an unreliable historian when it came to reporting his abuse of alcohol and other substances. He reported that he had only abused cocaine on that day. He was protective and defensive of his alcohol use information. This indicated the Veteran had not entered the recovery phase of treatment. He denied abusing other substances besides cocaine, but records indicated he had used heroine, opiates, and benzodiazepines, according to progress notes. Substance abuse was a progressive disease and lead to the consequences of poor relationships, job loss, homelessness and feelings of despair. This was considered primary because the Veteran's other conditions could not improve until he was in recovery for several years. Based on the Veteran's denial of the severity of the problem, he was not even in the contemplative stage of change. He was still drinking and used benzodiazepines in spite of the health consequences. 

Meanwhile, regarding diagnosed depressive disorder, the Veteran did experience intermittent depression which to some extent was substance induced. His childhood issues of abuse, of course, might still cause him concern but he had had therapy for those issues and he seemed to have recovered to some degree. His continued alcohol abuse confused the issue. It had become his reason to drink. "I am self-medicating" he stated. He recently terminated therapy, because he reported on the day of this exam, he did not want VA health providers coming to his home. This was not the action of someone interested in recovery.

Regarding the diagnosed personality disorder, NOS, it was observed that the Veteran's symptoms of this condition included blaming others; problems in relationships as evidence by his failed marriages, no relationship with his child, difficulty maintaining a therapeutic relationship, and few friends; not taking responsibility for himself as evidenced by not looking for a job in several years, and terminating therapy; his use of denial, as evidenced by his report today of one DUI when there were reported of two DUIs and a motor vehicle accident in which he was drinking alcohol; rigid thinking as evidence by his statement that nothing could help him; his willingness to manipulate the Compensation and Pension process by being selective in reporting as evidenced by the many discrepancies in his reporting. According to the VA examiner, the claims file contained a long letter signed by the Veteran in which his complaints with the last Compensation and Pension report were articulately and thoroughly reported. This letter demonstrated his ability to think, write well and function at a high capacity. If the Veteran's energies could be focused on recovery he would be more likely to make progress. His energy, based on his behavior, appeared to focus on obtaining benefits. This too was a characteristic of a person with a personality disorder. 

The VA examiner further clarified with regard to all three diagnoses, that at this point in the Veteran's life the addiction problem appeared to be the primary diagnosis which accounted for most of his symptoms. He felt suicidal when he relapsed. His personality disorder made it possible for him to continue his drinking behavior. All his diagnoses related to his drinking and substance abuse issues. It was believed he had become accustomed to the victim role. He saw no need to change even though he had expressed that he was not happy with his life. He had not been able to use the AA axiom to "accept the things you cannot change and change the things you can." While it was believed the addiction was primary his other disorders helped maintain the addiction. In this sense there was no way to separate the symptoms. 

It was then indicated in summary that the claimed mental health condition was less likely than not incurred in or caused by claimed in-service injury, events or illness. The stated rationale for this opinion was that the Veteran was introduced to alcohol at age five, he continued to drink as a teenager, and he began to drink heavily in the military. He had a strong genetic predisposition to substance abuse. It was most likely that his condition simply progressed as addictions do. His progression would continue until all addicted substances were terminated. Further noted was that the Veteran was evaluated in the military and it was believed he was depressed due to his divorce. The Veteran did not seek treatment. The Veteran also named other stressors that were making him depressed such as washing out of OCS. After this passage of time the Veteran would have recovered from that situational depression that occurred in the military. He might still have depression related to his pre-military abuse, and most likely was depressed due to substance induced mood disorder. Depression was not military related. His tendency to want to blame the military was related to his personality disorder. A personality disorder generally forms in childhood, and is not caused or exacerbated by military experience. In this case, according to the examiner, it had made the Veteran's other conditions more difficult to treat. None of his conditions were caused or exacerbated by his military experience.

Analysis

The Board has given thorough and careful consideration to the extensive medical evidence of record, and finds that on the balance, the presentation of competent medical evidence effectively weighs against the instant claim for service connection for an acquired psychiatric disorder. In reaching this determination, the Board has been fully cognizant of all plausible theories of recovery, including that elucidated through the Court's June 2011 Joint Motion for Remand indicating that the Board need expressly consider the theory of whether the Veteran had PTSD pre-existing service which underwent aggravation therein. Ultimately, the Board's decision in this case upon the Veteran's claim turns upon two essential findings, the first being that the competent evidence does not definitively substantiate a current clinical diagnosis of PTSD. To the extent there is some evidentiary support for the same diagnosis as a condition which pre-existed service, the evidence weighs against a finding of in-service aggravation. The second essential finding underlying the Board's decision is that the most competent evidence demonstrates that depressive disorder originated wholly apart from events transpiring in service, and instead is best attributed to a pattern of post-service substance abuse, which as a primary disorder cannot provide a legal basis for service connection. There are no additional mental health diagnoses on file which might otherwise tend to substantiate or warrant further inquiry into the Veteran's claim on the merits.

With regard to first, the claim as it pertains to service connection for PTSD, the Board finds upon a thorough review of the evidence that the best evidence from VA evaluating treatment providers has most likely ruled out a diagnosis of PTSD as not corresponding to the Veteran's current claimed health impairment. The Board acknowledges that a February 2008 VA psychological evaluation, and then a March 2010 VA psychiatric examination (largely based on the results of the former evaluation) both diagnosed PTSD. However, the more recent VA examination of June 2012 expressly ruled out a diagnosis of the same. 

Where, as here, there are divergent medical opinions of record, it is the province of the Board to weigh these opinions, and their underlying bases, and determine which to accept as the most persuasive. See Elkins v. Brown, 5 Vet. App. 474, 478 (1993) (the Board may consider and evaluate the underlying basis of an opinion on a medical question, and determine whether to accept such an opinion under the circumstances). See also Schoolman v. West, 12 Vet. App. 307, 310-311 (1999); Evans v. West, 12 Vet. App. 22, 30 (1998); Swann v. Brown, 5 Vet. App. 229, 233 (1993). In so doing, the Board is mindful that it cannot make its own independent medical determination and there must be plausible reasons for favoring one medical opinion over another. Evans, 12 Vet. App. at 31. See also Rucker v. Brown, 10 Vet. App. 67, 74 (1997), citing Colvin v. Derwinski, 1 Vet. App. 171 (1991).

The Board must ascribe a greater degree of probative weight to the more recent VA clinical diagnosis ruling out a PTSD diagnosis. On this subject, the Board finds that this involved the only clinical study which directly evaluated the Veteran under the DSM-IVR criteria for establishing a diagnosis of PTSD, upon which several of the key criteria were not met. The Veteran had likewise scored below the threshold for diagnosing PTSD on recent psychometric testing administered through VA. 
Meanwhile, the preceding VA evaluations (from 2008 and 2010) did not conduct anywhere near as searching and thorough a diagnostic assessment. This is all apart from the fact that on the June 2012 VA examination, the Veteran did not have one particular identified stressor at least directly from military service which suggested or correlated with a diagnosis of PTSD in its severity. Indeed, the issue of sufficiency of a stressor remains a medical matter within the discretion of the medical evaluator to comment upon. See Cohen, 10 Vet. App. at 144. The June 2012 VA examiner likewise had a readily available explanation for the Veteran's current symptomatology and claimed mental health impairment, rooted in a pattern of substance abuse and residual personality disorder symptoms. The June 2012 VA examiner's evaluation likewise followed a longitudinal study of the Veteran's mental health history over time, and represents the most contemporaneous assessment of the extent of current disability. See Guerrieri v. Brown, 4 Vet. App. 467, 470-71 (1993) (the probative value of medical opinion evidence is based on the medical expert's personal examination of the veteran, the physician's knowledge and skill in analyzing the data, and the medical conclusion the physician reaches).

As to the matter of current diagnosis, therefore, the most persuasive evidence of record tends to weigh heavily against the propriety of a PTSD diagnosis. 

Under VA law, the first criterion to establish service connection is competent evidence of the current disability claimed. Moore v. Nicholson, 21 Vet. App. 211, 215 (2007), citing Francisco v. Brown, 7 Vet. App. 55, 58 (1994) ("Compensation for service-connected injury is limited to those claims which show a present disability."); Hicks v. West, 12 Vet. App. 86, 89 (1998); Rabideau v. Derwinski, 2 Vet. App. 141, 144 (1992). See also Brammer v. Derwinski, 3 Vet. App. 223, 225 (1992) ("Congress specifically limits entitlement for service-connected disease or injury to cases where such incidents have resulted in a disability."). Absent a showing of a current disability, the Veteran's claim for service connection cannot be substantiated. There is no basis for further inquiry into the subject of etiology, including on a theory of in-service incurrence or aggravation, without a corresponding diagnosis of a present disability. 

The Board has considered that at least one prior evaluator did indicate the presence of PTSD due to a history of childhood abuse. Clearly, this is readily indicative of the potential of PTSD prior to entrance into military service. As previously indicated, the best available evidence before the Board is that PTSD is still not a primary component of the current clinical diagnostic picture. However, even assuming for the sake of comprehensive consideration of the Veteran's claim that PTSD was part of the current diagnostic profile, the June 2012 VA examiner clearly stated in the body of her examination report that "none of [the Veteran's] conditions are caused or exacerbated by his military experience." This followed extensive analysis that identified a personality disorder and nonservice-related factors, including substance abuse, as the primary driving reasons surrounding present mental health impairment. Thus, the Veteran's service and events therefrom have been ruled out as causing or contributing to a valid pre-existing condition. Accordingly, even considering the propriety of a current PTSD diagnosis were it shown, the competent evidence nonetheless would weigh against any finding of in-service aggravation. 

Turning to next, the condition of depression as another basis for recovery, the Board finds that while this condition has clearly been acknowledged as part of the current mental health profile for the Veteran, the preponderance of the competent and probative evidence nonetheless distinctly rules out this condition as being objectively related to an incident of the Veteran's service. 

Here again, there are somewhat conflicting reports. The March 2010 VA examiner hesitated to diagnose depression at all, and ultimately diagnosed a substance induced depression rather than a generalized "major depression." To this effect, the examiner noted that the Veteran's long history of interpersonal and professional circumstances in service, including having been required to leave OCS, his subsequent duty assignment, and the break-up of his marriage during service were not the cause of subsequent depressive symptoms. The Veteran's reaction to reported "washing out" of OCS went "well beyond that expected of a reasonable person." The examiner found that the Veteran's depressive symptomatology was instead readily attributable to features of his personality disorder, often in combination with substance abuse, and noted also that there were many recorded instances of substance abuse and addiction prior to any diagnosis and treatment of depression.

The June 2012 VA examiner reached a similar conclusion, and including based on review of documented service records that show the Veteran manifested some signs of being depressed in service due to a pending divorce and personnel matters. However, the VA examiner emphatically stated that depression was not military related. It was believed that on the whole the Veteran would have recovered from the situational depression that occurred in the military. Rather, depression was most likely due to substance induced mood disorder, with a contributing effect from a personality disorder. 

The one contrary opinion, a November 2011 VA psychologist's statement, identifies each of the events encapsulated in the service personnel history in some detail, including interpersonal and personnel matters, as well as financial difficulties during service, and found that any one of these psychosocial stressors on its own, much less in combination, could have caused the onset of depression. Hence, the Veteran's military service either likely caused a depressive disorder or exacerbated preexisting PTSD to the point of functional impairment.

The Board presently determines that the VA medical opinion evidence weighing against a finding of a causal nexus relationship to military service is most probative on the balance. Indeed, the primary reason for this assessment is that both VA examinations (of March 2010 and June 2012) specifically took into account the Veterans extended and uncontroverted history of long-term substance abuse as a factor in determining the etiology of current depressive symptomatology. As stated, under VA law, service connection on the primary basis of substance abuse is expressly precluded. See 38 U.S.C.A. § 105; 38 C.F.R. § 3.301(d). The Board notes that this determination that substance abuse best explains the Veteran's symptomatology is corroborated by the fact that for nearly 20 years post-service the Veteran only sought and obtained relevant treatment for substance abuse, and never reported or received treatment for depression per se. This same factual circumstance likewise shows a lack of continuity of symptomatology of depression from service to the time of initial diagnosis in the early-2000s, another factor that both substantiates the VA examiners' opinions, and independently weighs against any causal nexus to military service. See 38 C.F.R. § 3.303(b) (addressing the continuity of symptomatology requirement to demonstrate causal relationship to service, where an in-service condition is not "chronic" in nature). See also Clyburn v. West, 12 Vet. App. 296, 302 (1999). In any event, given the history of substance abuse as predominating in the medical history, the lack of discussion whatsoever of in the November 2011 VA treating psychologist's opinion is ultimately detrimental and substantially reduces the probative value therein. This opinion simply does not address all the relevant medical history. The Board further points out that moreover, this particular opinion does not address anywhere how the events from service could have caused depression on a long-term basis, when VA medical records fail to show treatment for the same for such an extended intervening time period. While the Board does not wish to minimize at all the severity of any stressful circumstances the Veteran experienced in service, there is nothing to objectively support the conclusion that the stress manifested therein persisted to the present time period, and again, notwithstanding a prolonged pattern of intervening substance abuse. Accordingly, the best evidence on file weighs against a finding that depression was incurred in service.

The one remaining diagnosis intermittently provided has been a personality disorder. However, a personality disorder is deemed under VA law a congenital condition that is generally not recognized as a disability for VA purposes. See 38 C.F.R. § 3.303(c). There is an exception for when a personality disorder was aggravated by superimposed injury or disease in service, but that is not alleged or shown in this instance. See VAOPGCPREC 82-90 (July 18, 1990); see also Martin v. Principi, 17 Vet. App. 342, 328-29 (2003); Monroe v. Brown, 4 Vet. App. 513, 515 (1993)

The Veteran's own assertions have also been afforded appropriate weight however, as he is a layperson, he cannot opine on the current diagnosis of PTSD, or issue of causation of any other psychiatric disorder, as matters not within the purview of lay observation, particularly given the length of time elapsed since any precipitating events from service, and the mental health expertise required to render a competent diagnosis in this subject area. See Grottveit v. Brown, 5 Vet. App. 91, 93 (1993); Espiritu v. Derwinski, 2 Vet. App. 492, 494 (1992).

For these reasons, the Board is denying the claim for service connection for an acquired psychiatric disorder, including PTSD. The preponderance of the evidence is against the claim, and under these circumstances the benefit-of-the-doubt doctrine does not apply. 38 U.S.C.A. § 5107(b); 38 C.F.R. § 3.102. Gilbert v. Derwinski, 1 Vet. App. 49, 55 (1990). 


ORDER

Entitlement to service connection for an acquired psychiatric disorder, including PTSD, is denied.



____________________________________________
L. M. BARNARD
Acting Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs